Michael Melancon
Crystal Melancon
118 Braden Drive
Luling LA, 70070
Tel: (985) 308-1277
Cell: (504) 329-1212

Plaintiff In Propria Persona



FILED
U.S. DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

2010 JUN 11  AM 9: 42

LORETTA G. WHYTE
CLERK

**10 -1723**

## UNITED STATES DISTRICT COURT,

**SECT. R MAG. 2**

## EASTERN DISTRICT OF LOUISIANA, FIFTH CIRCUT

| | |
|---|---|
| MICHAEL MELANCON, an individual; CRYSTAL MELANCON, an individual, <br><br> Plaintiffs, <br> vs. <br><br> COUNTRYWIDE BANK, a Business Entity, form unknown; FIRST AMERICAN TITLE INSURANCE CO., a Business Entity, form unknown; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. a Business Entity, form unknown; and DOES 1 through 50, inclusive, <br><br> Defendants. | Case No.: <br> **COMPLAINT FOR:** <br><br> 1. DECLARATORY RELIEF; <br> 2. INJUNCTIVE RELEIF; <br> 3. DETERMINE NATURE, EXTENT AND VALIDITY OF LIEN; <br> 4. CONTRACTUAL BREACH OF GOOD FAITH FAIR DEALING; <br> 5. VIOLATIONS OF TILA; <br> 6. VIOLATIONS OF RESPA; <br> 7. RECISION; <br> 8. FRAUD; <br> 9. UNFAIR AND DECEPTIVE ACTS AND PRACTICES (UDAP); <br> 10. BREACH OF FIDUCIARY DUTY; <br> 11. UNJUST ENRICHMENT; <br> 12. UNCONSCIONABILITY; <br> 13. PREDATORY LENDING; <br> 14. QUIET TITLE; <br> 15. LACK OF STANDING (MERS). <br><br> **JURY TRIAL DEMANDED** |

✓ Fee $350
✓ Process
x Dktd
___ CtRmDep
___ Doc. No.

**INTRODUCTION**

COMES NOW the Plaintiffs MICHAEL MELANCON and CRYSTAL MELANCON (hereinafter referred to collectively as "Plaintiffs" or "Borrowers"), allege as follows:

**PARTIES**

1.      At all times relevant herein, Plaintiffs were over the age of eighteen and is and were a resident of 118 Braden Lane, Luling, LA 70070, County of St. Charles, State of Louisiana (hereinafter referred to as "Subject Property").

2.      Plaintiffs purportedly entered into a loan repayment and security agreement (hereinafter referred to as "LOAN") on or about, March 5, 2008 with Defendant COUNTRYWIDE BANK, (hereinafter referred to as "COUNTRYWIDE"), which allegedly required Plaintiffs to repay a loan of $270,750.00 to COUNTRYWIDE.  The loan program consisted of a Purchase Money loan based on a Stated Income program. The loan of the 1st mortgage was for $270,750 which was 92% Loan-to-Value ratio.  This essentially left almost no equity in the home at the time of purchase. COUNTRYWIDE is a national lender specializing in Subprime lending. The 1st mortgage was fixed and amortized over a 30 year period with an interest rate at 6.750%. The fixed mortgage payment was $1,756.08. The PMI insurance due for the 11 years would be an additional payment of $170.25 monthly to the mortgage payment. The Debt-to-Income ratio on the approved loan was over the standard underwriting practices at a level of 37.79%. This program leaves almost no equity in the purchase of the home. The loan was purportedly secured by the Subject Property.

3.      Plaintiffs are informed and therefore believe that Defendant COUNTRYWIDE, a

Business Entity, form unknown, is a corporation, authorized to do business in the State of Louisiana. COUNTRYWIDE is the original mortgage lender with business addresses of: 1199 North Fairfax Street, #500, Alexandria, VA 22314.

4.     Plaintiffs are informed and therefore believe that Defendant FIRST AMERICAN TITLE INSURANCE CO., (hereinafter referred to as "FIRST"), a Business Entity, form unknown, is, authorized to do business in the State of Louisiana. FIRST is the original escrow/title company for the loan with an unknown business address.

5.     Plaintiffs are informed and therefore believe that Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., (hereinafter referred to as "MERS"), a Business Entity, form unknown, is, authorized to do business in the State of Louisiana. MERS is the original named beneficiary for the loan with a business address of P.O. Box 2026, Flint, MI 48051.

6.     The Defendants (each of them named in paragraphs 1 through 5 above, shall collectively be referred to as "DEFENDANTS") named herein "all persons unknown", claiming any legal or equitable right, title estate, lien or interest in the property described in this Complaint adverse to Plaintiff's title thereto and as DOES I through 50 (hereinafter referred to as "UNKNOWN DEFENDANTS") are unknown to Plaintiffs. These unknown Defendants and each of them claim some right, title, estate, lien or interest in the Subject Property hereinafter described adverse to Plaintiff's title and their claims and each of them constitute a cloud on Plaintiff's title to the Subject Property. Plaintiffs are informed and therefore believe, and on that basis allege that each fictitiously named herein as a DOE is responsible for the events happening hereinafter alleged. Plaintiffs will seek leave of the Court to amend this Complaint to allege the true names and capacities of said fictitiously named Defendant's when ascertained.

7.      Plaintiffs are informed and therefore believe and on that basis allege that at all times mentioned herein, the Unknown Defendants are individuals and/or business entities whose forms are unknown and were agents, principals, employees, employers and co-conspirators of each and every other named or unnamed Defendant in this Complaint.  Plaintiffs are informed and therefore believe and on that basis allege that each of said Defendants is and at all relevant times herein, was acting within the scope and consent of the remaining named and unnamed Defendants.

8.      Whenever in this Complaint an act or omission of a corporation or business entity is alleged, the allegation shall be deemed to mean and include an allegation that the corporation or business entity acted or omitted to act through its authorized officers, directors, agents, servants, and/or employees, acting within the course and scope of their duties, that the act or omission was authorized by corporate managerial officers or directors, and that the act or omission was ratified by the officers and directors of the corporation or business entity.

9.      As a result of their mortgage activities, Defendants and each of them are and were subject to and must comply with the Federal Truth In Lending Act (hereinafter referred to as "TILA")[15 U.S.C. §1601-16666j], the Federal Code of Regulations[ 24 C.F.R § 3500.1-3500.17]; the Real Estate Settlement Procedures Act (hereinafter referred to as "RESPA")[12 U.S.C. § 2601 et.seq.]; [§ 17200; Federal Trade Commission § 5]; 24 Code of Federal Regulations § 3500.10; and Unfair and Deceptive Business Practices and Acts [UDAP Statutes];

## JURISDICTION

10. Jurisdiction of this court is involved due to the presentation of a Federal question  pursuant to the Federal statutes outlined above and 28 U.S.C. §§ 1331 and 1337.

11. This Court has supplemental jurisdiction over Plaintiff's State law claims pursuant to 28 U.S.C. § 1367.

12. This Court has jurisdiction to render the declaratory judgment Plaintiff seeks pursuant to 28 U.S.C. § 2201.

13. Venue is proper within this district pursuant to 28 U.S.C. § 1391(b), because: (i) the real property exists within said district, (ii) the Defendants, and each of them, has/have or is/are doing business within the district; and (iii) further, the *pendente* causes of action pursuant to Louisiana law concerns real property within the County of St. Charles within this district.

## FACTUAL ALLEGATIONS

14.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

15.   For years, mortgage brokers and lenders have been selling loan products that they knew or should have known would never be able to be repaid by the borrower and would prevent borrowers from ever actually owning the home.  Instead, borrowers were offered interest-only, negative amortization, and/or other subprime loan products that amounted to no more than a short term lease until the payments became so unaffordable that the borrowers are now faced with either bankruptcy or foreclosure.  The housing bubble of the past decade was created by predatory lending practices, such as charging excessive fees, incorporating payment penalties, negative amortization payments, or other abusive terms in the agreements, providing kickbacks to brokers, flipping loans, using balloon payments to conceal the true burden of the financing, requiring unnecessary insurance and other products, including mandatory arbitration clauses, steering borrowers to subprime loans when they qualify for conventional loans, and using bait and switch tactics.  All were rampant within the industry without oversight or good judgment and found to be inconsistent with important national objectives, including the goals of fair access to credit, community development, and stable homeownership by the broadest spectrum of America.  Rather than offering a loan product that was

viable and long-term for the borrower and lender, brokers and lenders greedily sold whatever they could get away with, arguably the primary catalyst for what is now this country's worst economic crisis since the Great Depression.

16. The loan product sold to Plaintiffs in this case was exactly the kind of loan that has contributed to our national problem.  The Defendants were aware of this trend, and possessed the foresight to advise Plaintiffs of this risk.  They intentionally concealed the negative implications of the loan they were offering, and as a result, Plaintiffs face the potential of losing their home to the very entity and entities who placed them in this position.

17. The terms of the finance transaction with COUNTRYWIDE are not clear or conspicuous, nor consistent, and are illegal, and include, for example, a negative amortization of the loan, an amount financed based upon a stated income and a credit report ONLY, flawed underwriting procedures, use of understated income and other rates, fees and terms for which COUNTRYWIDE either did not disclose, make clear or had not included as part of the finance charge.

18.      In addition, and unbeknownst to Plaintiffs, COUNTRYWIDE illegally, deceptively and/or otherwise unjustly, qualified Plaintiffs for a loan which the DEFENDANTS knew or should have known that Plaintiffs could not qualify for or afford by, for example, using an Automated Underwriting System as the qualifying factor for its underwriting decision.  Had COUNTRYWIDE used a more accurate and appropriate factor, such as considering the actual income, the debt ratio and the negative amortization schedule of the loan, Plaintiffs would not have qualified for the loan in the first place.  Consequently, COUNTRYWIDE sold Plaintiffs a loan product that it knew or should have known would never be able to be fully paid back by Plaintiffs.  COUNTRYWIDE ignored long-standing economic principals of underwriting and instead, knowingly, liberally, greedily and without any regard for Plaintiff's rights sold Plaintiffs a deceptive loan product.

19. There was no determination of the ability of the Plaintiffs to repay the loan, with complete disregard for the Guidance Letters issued by Federal Agencies and even Federal and State Law.

20.     Defendants, and each of them, neither explained the workings of the entire mortgage loan transaction, how the rates, finance charges, costs and fees were computed, nor the inherent volatility of the loan product(s) provided by Defendants.

21.     The purpose of entering into the above-described mortgage loan transactions was for Plaintiffs to eventually own the Property.  That purpose was knowingly and intentionally thwarted and indeed made impossible by Defendants' actions alleged herein.

22. Each subsequent Defendant who has participated in, been assigned or been transferred Rights, or holds a position or interest under this loan agreement, including COUNTRYWIDE, FIRST, MERS and UNKNOWN DEFENDANTS failed to perform their due diligence in investigation the legal requirements that this loan should have been processed within.  As a result, Defendants now hold an interest in a loan that was improperly handled from its inception.

23. A expert, certified, forensic audit of the Plaintiff's loan documents revealed the following legal violations which were incurred during the handling and processing of Plaintiff's loan:

24. Plaintiffs are informed and believe and therefore allege that Defendants did not comply with the requirement to provide Plaintiffs with a Mortgage Loan Origination Agreement.

26.  Plaintiffs are informed and believe and therefore allege that COUNTRYWIDE has placed Plaintiffs into a loan whereby they increased the margin so as to receive a Yield spread Premium/Discount Fee of $1,353.75, which benefits COUNTRYWIDE over the life of the loan. COUNTRYWIDE also failed to provide a separate fee agreement regarding Yield Spread

Premium/Discount Fee, properly disclosing this fact. As a result COUNTRYWIDE has enjoyed the benefits of Unjust Enrichment.

27. Plaintiffs are informed and believe and therefore allege that the underwriter approved this loan based only upon a stated income and a medium to high risk credit score and a belief that the property would continue to increase in value and that the Plaintiffs should have been declined for this loan.

28. Plaintiffs are informed and believe and therefore allege that that based on a Real Income Analysis, with the type of take home income Plaintiffs possess and that was clearly disclosed to Defendants, that the borrower would not be able to support the home payment over an extended period.

29. Plaintiffs are informed and believe and therefore allege that COUNTRYWIDE was paid Unearned fees, which were hidden from Plaintiffs in the form of a Yield Spread Premium/Discount Fee which increased the interest rate of the Borrower, whereby creating a windfall for COUNTRYWIDE over the life of the loan. This was purported to Plaintiffs by explaining that the Yield Spread Premium/Discount Fee was a "credit for closing costs".

30. Plaintiffs are informed and believe and therefore allege that Defendants failed to provide Plaintiffs with written notice of the furnishing of negative credit information to consumer reporting agency after Defendants furnished such negative credit information about Plaintiffs.

31. Plaintiffs are informed and believe and therefore allege that Defendants breached their fiduciary duty to Plaintiffs because they knew or should have known that the Plaintiffs will or had a strong likelihood of defaulting on this loan, he/she has a fiduciary duty to the borrower to not place them in that loan (in harms way).

32. Plaintiffs are informed and believe and therefore allege that it was in the best interest of

the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the Plaintiffs financial position or livelihood.

33. Plaintiffs are informed and believes and therefore alleges that as a result of the practices of Defendants, and each of them throughout the handling of this loan, that such practices are consistent with the definition of predatory lending, and encompass numerous characteristics that indicate such.

34. Plaintiffs are informed and believe and therefore allege that Defendants provided inadequate disclosure of the true costs, risks and, where necessary, appropriateness to the borrower of loan transactions in violation of the Federal Trade Commission Act.

36. Plaintiffs are informed and believe and therefore allege that Defendants engaged in unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising in violation, rising to unfair and deceptive business practices, in violation of the Unfair and Deceptive Acts and Practices statutes.

## FIRST CAUSE OF ACTION

### Declaratory Relief

### (Against All Defendants)

37.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

38.     An actual controversy has arisen and now exists between Plaintiffs and Defendants regarding their respective rights and duties, in that Plaintiffs contends that Defendants did not have the right to foreclose on the Subject Property because Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations

3500.10, UDAP, TILA and RESPA. Thus the purported power of sale by Defendants no longer applies. Plaintiffs further contend that Defendants do not have the right to foreclose on the Subject Property because Defendants did not properly comply with proper delivery procedures under RESPA. Plaintiffs further contend that the Defendants perpetrated a fraudulent loan transaction.

39.     Plaintiffs request that this Court find the purported power of sale contained in the Loan of no force and effect at this time, because Defendants actions in the processing, handling and attempted foreclosure of this loan has contained numerous violations of State and Federal laws designed to protect borrowers, which has directly caused Plaintiffs to be at an equitable disadvantage to Defendants. Plaintiffs further requests that title to the Subject Property remain in Plaintiff's name, with said Deed of Trust remaining in beneficiaries' name, during the pendency of this litigation, and deem the any sale of the Subject Property "unlawful and void".

40.     As a result of the Defendants' actions, Plaintiff has suffered damages according to proof, and seeks declaratory relief that Defendants' purported power of sale is void and has no force or effect against the Subject Property.

41.     Further, Defendants' actions have been willful, knowing and malicious.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## SECOND CAUSE OF ACTION

### Injunctive Relief

### (Against All Defendants)

42.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

43.     Defendants have commenced (or are planning to commence) a foreclosure action under the Note and have scheduled (or will schedule) a non-judicial sale. Said sale will cause Plaintiffs great and irreparable injury in that real property is unique.

44. The wrongful conduct of Defendants, unless restrained and enjoined by an order of the court, will cause great and irreparable harm to Plaintiffs. Plaintiffs will not have the beneficial use and enjoyment of the property and will lose his home

45. Plaintiffs have no other plain, speedy or adequate remedy and the injunctive relief prayed for below is necessary and appropriate at this time to prevent irreparable loss to Plaintiffs. Plaintiffs has suffered and will continue to suffer in the future unless Defendants' wrongful conduct is restrained and enjoined because real property is inherently unique and it is and will be impossible for Plaintiffs to determine the precise amount of damage Plaintiffs will suffer.

WHEREFORE, Plaintiffs pray for relief as set forth below.

### THIRD CAUSE OF ACTION

**Determine Nature, Extend and Validity of Lien**

**(Against All Defendants)**

46.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

47.     A written instrument that purports to be a Deed of Trust executed by Plaintiffs is presently in existence and under Defendant's control. The Deed of Trust is voidable in that there is no enforceable underlying promissory note for the deed of trust to secure.

48.     Prior to the commencement of this case, COUNTRYWIDE purportedly received a copy of a promissory note which they intend to foreclose upon. Plaintiffs alleges on information and

belief that COUNTRYWIDE does not possess the original promissory note nor did defendants ever take actual possession of the original promissory note.

49.     Defendants failed to comply with the requirements set to perfect a security interest by not holding possession of the original Note.

50.     As a result, defendants never perfected their interest in the above referenced deed of trust.

51.     Said unperfected security interest of defendant is void as to Plaintiffs by virtue of 11 U.S.C. §544.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTH CAUSE OF ACTION

### Contractual Breach of Implied Covenant of Good Faith and Fair Dealing

### (Against All Defendants)

52.     Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

53.     Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement.  This implied covenant of good faith and fair dealing requires that no party will do anything that will have the effect of impairing, destroying, or injuring the rights of the other party to receive the benefits of their agreement.  The covenant implies that in all contracts each party will do all things reasonably contemplated by the terms of the contract to accomplish its purpose.  This covenant protects the benefits of the contract that the parties reasonably contemplated when they entered into the agreement.

54. The terms of the Loan imposed upon Defendants a duty of good faith and fair dealing in this matter.

55. Defendants enjoyed substantial discretionary power affecting the rights of Plaintiffs during the events alleged in this Complaint.  Defendants were required to exercise such power in good faith.

56. Defendants willfully breached their implied covenant of good faith and fair dealing with Plaintiffs when Defendants:

    I.  Willfully withheld numerous disclosures;

    II.  Willfully withheld notices in regard to Underwriting standards, Yield Spread Premiums/Discount Fees, Disclosures of additional income due to interest rate increases, failed to provide a Loan Origination Agreement and proper Notices of Plaintiff's Right to Cancel, and failure to disclose when negative credit scores were disseminated;

    III.  Willfully placed Plaintiffs in a loan that they did not qualify for, could not afford, and subjected them to further financial detriment, while providing Defendants with financial benefits they would not have otherwise enjoyed.

57. As a result of Defendants' breach of this covenant, Plaintiffs has suffered injury and has caused Plaintiffs the threat of loss of their home.  Plaintiffs have incurred and continue to incur legal fees, including attorney fees and costs, as well as expenses to right this wrong.

58. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiffs to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FIFTH CAUSE OF ACTION

### Violation of TILA, 15 U.S.C. § 1601, et.seq.

### (Against All Defendants)

59. Plaintiff re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

60.     The Truth In Lending Act (TILA) applies because the transaction involves the extension of credit to a consumer for personal, family or household purposes that is subject to a finance charge and/or payable by written agreement in more than four installments per 15 U.S.C. §§ 1601-1666j.

61.     Defendants violated TILA by failing to provide Plaintiff with accurate material disclosures required under TILA and not taking into account the intent of the State Legislature in approving this statute which was to fully inform home buyers of the pros and cons of mortgages in a language (both written and spoken) that they can understand and comprehend; and advise them to compare similar loan products with other lenders. It also requires the lender to offer other loan products that might be more advantageous for the borrower under the same qualifying matrix.

62.     Plaintiff is informed and believes and therefore alleges that this loan also contained inconsistent Truth In Lending Disclosures. The interest rate was inconsistent and not properly disclosed.  The initial and the actual interest rates were inconsistent.

63.     Defendant's did not furnish Plaintiff with an accurate Good Faith Estimate and Commitment as required by TILA.

64.     Defendant's did not provide Plaintiff with a Property/Hazard Insurance Disclosure as required by TILA.

65.     Defendant's did not provide Plaintiff with a disclosure of the legal obligations between the parties required by TILA.

66.     Defendants did not provide Plaintiff with <u>two copies each</u> of their Notice of their Right to Cancel, whereas under 12 C.F.R. § 226.23(b). 2 copies are required to be provided, per borrower; and filled out completely.

67.     Per 12 CFR § 226.19(b), COUNTRYWIDE was required to provide the Plaintiffs with the "Consumer Handbook on Adjustable Rate Mortgages" (CHARM) booklet. Plaintiff never received this disclosure, which is paramount to understanding what type of loan program Plaintiff was to receive, resulting in a violation of TILA laws.

68.     Any and all statute[s] of limitations relating to disclosures and notices required pursuant to 15 U.S.C. § 1601, et.seq. were tolled due to Defendants' failure to effectively provide the required disclosures and notices.

69.     The ability to repay the loan is addressed in TILA 226.34(A)(4), which states, "Whether a creditor is engaging or has engaged in a pattern or practice of violations of this section depends on the totality of the circumstances in the particular case." While a pattern or practice is not established by isolated, random, or accidental acts, it can be established without the use of a statistical process. In addition, a creditor might act under a lending policy (whether written or unwritten) and that action alone establishes a pattern or practice of making loans in violation of this section.

70.     A creditor may verify and document a consumer's income and current obligations through any reliable source that provides the creditor with a reasonable basis for believing that there

are sufficient funds to support the loan. Reliable sources include, but are not limited to, a credit report, tax returns, pension statements, and payment records for employment income.

71.    Plaintiff is informed and believes and therefore alleges that COUNTRYWIDE failed to disclose a Good Faith Estimate and explanation of the variable rate and/or fixed rate per 12 CFR § 226.17-18.  They failed to deliver good faith estimates of disclosures (preliminary TILD) within 3 days of loan application per 12 C.F.R. §§ 226.19(a).

72.    An actual controversy now exists between Plaintiff, who contends he has the right to rescind the loan on the Subject Property alleged in this Complaint, and based on information and belief, Defendants deny that right.

73. As a direct and proximate result of Defendants' violations Plaintiff has incurred and continues to incur damages in an amount according to proof but not yet ascertained including without limitation, statutory damages and all amounts paid or to be paid in connection with the transaction.

74. Defendants were unjustly enriched at the expense of Plaintiff who is therefore entitled to equitable restitution and disgorgement of profits obtained by Defendants.

75. Defendants' actions in this matter have been willful, knowing, malicious, fraudulent and oppressive, entitling Plaintiff to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in the same behavior.

WHEREFORE, Plaintiff prays for relief as set forth below.

## SIXTH CAUSE OF ACTION

### Violation of RESPA, 1 U.S.C. § 2601 et.seq.

(Against All Defendants)

76.  Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

77. The loan to Plaintiffs was a federally-regulated mortgage loan as defined in RESPA.

78. Housing and Urban Development's (HUD's) 1999 Statement of Policy established a two-part test for determining the legality of lender payments to mortgage brokers for table funded transactions and intermediary transactions under RESPA:

(1) Whether goods or facilities were actually furnished or services were actually performed for the compensation paid and;

(2) Whether the payments are reasonably related to the value of the goods or facilities that were actually furnished or services that were actually performed.

In applying this test, HUD believes that total compensation should be scrutinized to assure that it is reasonably related to the goods, facilities, or services furnished or performed to determine whether it is legal under RESPA.

78. Here, COUNTRYWIDE paid discount fees in the amount of $1,353.75 in order to eventually receive a "kickback" and ultimately benefit over the life of the loan, which were hidden from Plaintiffs.  The extent of the benefit resulted in COUNTRYWIDE receiving a windfall of "buy back fees" over the life of the loan.  It takes the borrower three years to repay the Yield Spread Premium. Once the three-year repayment period has ended, the margin on the interest rate does not drop. Instead, the borrower continues to pay at the same interest rate and the lender reaps the benefits of the higher payment.

79.     This was purported to Plaintiffs by explaining that the Yield Spread Premium was a "credit for closing costs" or other sort of bait and switch tactic.  The Yield Spread Premium

significantly affects the borrower's payment and financial situation.  COUNTRYWIDE has enjoyed the benefits of Unjust Enrichment.

80. No separate fee agreements, regarding Yield Spread Premium/Discount Fees that were enjoyed were ever provided, resulting in the benefits of Unjust Enrichment for COUNTRYWIDE.

81. Defendants violated RESPA because the payments to the mortgage broker and to the lender were misleading and designed to create a windfall.  These actions were deceptive, fraudulent and self serving.

82. As a proximate result of Defendants' actions, Plaintiffs have been damages in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

### SEVENTH CAUSE OF ACTION

#### Rescission

#### (Against All Defendants)

83. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

84. Plaintiffs are entitled to rescind the loan for all of the foregoing reasons: 1) TILA Violations; 2) Failure to provide a Mortgage Loan Origination Agreement; 3) Fraudulent Concealment; and 4) Public Policy Grounds, each of which provides independent grounds for relief.

85. The Truth In Lending Act, 15 U.S.C §1601, et.seq. extends Plaintiff's right to rescind a loan to three years from the date of closing if the borrower received false or incomplete disclosures of either the loans terms or Borrower's right to rescind.  Here, Defendants have failed to properly disclose the details of the loan.  Specifically, the initial disclosures do not initial TIL disclosures, and

lack of diligence and collusion on the part of the broker, lender and underwriter to place Plaintiffs in a loan they could not afford and would ultimately benefit Defendants following a foreclosure.

86.  The public interest would be prejudiced by permitting the alleged contract to stand; such action would regard an unscrupulous lender.

87.     As a proximate result of Defendants' actions, Plaintiffs have been damaged in an amount not yet ascertained, to be proven at trial.

WHEREFORE, Plaintiffs pray for rescission of the stated loan in its entirety.

### EIGHTH CAUSE OF ACTION

#### Fraud

#### (Against All Defendants)

88. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

89.  Defendants intentionally, willfully and wantonly engaged in the acts with the purpose of deceiving Plaintiffs and inducing them to part with their personal and real property buy using a stated income loan.

90. The credit application and or available W-2's provided by Plaintiffs was enough, in addition to the application itself for Defendant's to know what type of loan should be offered, and what the Plaintiff's could not afford.  Any falsification of a credit application by a broker or seller for the purposes of securing a loan is de facto fraud. U.S. v. Robinson, 4th Circuit, 2004.

91. Defendants engaged in the unlawful suppression of facts or circumstances by one of the parties to a contract from the other, for self-serving purposes and financial gain, which in justice ought to be made known.

92. Plaintiffs justifiably relied on Defendant's deception, which was the actual and proximate

cause of Plaintiff's damages.

93. Plaintiffs is entitled to exemplary and punitive damages for Defendants' fraudulent conduct in the sum to be determined at trial.  Further, fraudulent concealment avoids the contract.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## NINTH CAUSE OF ACTION

### Unfair And Deceptive Business Act Practices (UDAP)

### (Against All Defendants)

94. Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

95. Defendants failed to undergo a diligent underwriting process for this loan a alleged in this complaint.  They also failed to properly adjust and disclose facts and circumstances relating to Plaintiff's approval by stated income and misleading facts, which they should never have been approved for because they could not afford it.  Defendants did have that knowledge of these facts, circumstances and risks but failed to disclose them.

96. The current loan is riddled with deceptive and unfair methods of preying upon Plaintiffs.  That list contains but is not limited to the following violations: lack of Broker Disclosures and Mortgage Loan Origination Agreement, lack of complete Lender Initial Disclosures, flawed and substandard underwriting, lack of due diligence with regard to qualifying the Plaintiffs for the loan, Appraisal Fraud, Truth In Lending Disclosure errors, proper notice of Plaintiff's Right To Cancel, Payment of Yield Spread Premiums/Discount Fees as Unearned Fee and Unjust Enrichment, Equal Opportunity Act Violations, failure to meet Fiduciary Duty obligations, Fraudulent Misrepresentation of loan terms, Fraud in the Factum, and Equity Stripping.

97. By reason of Defendants fraudulent, deceptive, unfair, and other wrongful conduct as

herein alleged, said Defendant has violated Unlawful and Deceptive Acts and Practices laws by consummating an unlawful, unfair, and fraudulent business practice, designed to deprive Plaintiffs of their home, equity, as well as her past and future investment.

98. By reason of the foregoing, Plaintiffs has suffered and continues to suffer damages in a sum which is, as yet unascertained.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## TENTH CAUSE OF ACTION

### Breach of Fiduciary Duty

### (Against Defendants)

99.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

100.    Defendants owed a fiduciary duty to Plaintiffs and breached that duty by ailing to advise or notify Plaintiffs when Defendant's broker knew or should have known that Plaintiffs will or has a likelihood of defaulting on the loan, Defendants have a fiduciary duty to the borrower to not place them in that loan (in harm's way).

101.    Regarding this loan, it was in the best interest of the Defendants to promote the particular program for which they approved the Plaintiffs. It led to a maximization of profits for the Defendants, with no concern for the borrower. Alternative loan programs would have netted less return for the lender, though better for the borrower.

102. Defendant failed to provide material disclosures regarding the loan to Plaintiffs while in the capacity of Plaintiff's Lender.

103.    Defendants failed to fully comply with TILA/RESPA regulations and laws designated to protect Plaintiffs.  The failure to do so placed Plaintiffs in a serious disadvantage and potential

loss of their home.  Such actions are violations of a fiduciary responsibility owed to Plaintiffs by Defendants.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## ELEVENTH CAUSE OF ACTION

### Unjust Enrichment

### (Against All Defendants)

104.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

105.     Defendants provided the Plaintiffs with an agreement to repay a loan called for compensation to Defendants for the life of the loan, which was worth value to Defendants.

106.     Plaintiffs likewise expected in return, fair and truthful dealings, disclosures and practices by Defendants while providing value to Defendants.

107.     Defendants acknowledged, accepted, and benefited from the Plaintiff's agreement to enter into the loan.

108.     A forced sale of the Plaintiff's home, and an allowance for Defendant's to recoup the extreme profits enjoyed by forcing Plaintiffs into an imbalance of principal to interest ratio, would be inequitable and unconscionable, while the Defendants enjoy the benefit of the Plaintiff's actions without paying for their own breaches of the law and professional responsibilities.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## TWELFTH CAUSE OF ACTION

### Unconscionability – UCC-2-3202

### (Against All Defendants)

109.     Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though

fully set forth herein.

110.    If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

111.    When it is claimed or appears to the court that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose and effect to aid the court in making the determination.

112.    Here, based on the deception, unfair bargaining position, lack of adherence to the Regulations and federal standards that the Defendants were require to follow; coupled with the windfall that the Defendants reaped financially from their predatory practices upon Plaintiff's, the court may find that the loan agreement and trust deed are unconscionable and of no force or effect.

WHEREFORE, Plaintiffs pray for restitution and relief as set forth below.

## THIRTEENTH CAUSE OF ACTION

### Predatory Lending

### (Against All Defendants)

113.    Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

114.    The Office of Comptroller of the Currency defines Predatory Lending as any lien secured by real estate which shares well known common characteristics that result in Unfair and Deceptive Business Practices under the law.

115.   Acts undertaken by the Defendants here that are consistent with the Office of the Comptroller's definition include the fact that this loan was marketed in a way which fails to fully disclose all material terms and includes terms and provisions which are unfair, fraudulent or unconscionable;

116.   This loan is marketed in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan;

117.   The loan does not does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium/discount fees paid directly or indirectly, in whole or in part, to a mortgage loan officer;

118.   This loan utilized excessively high fees and costs to Plaintiffs.  This loan required the borrower to pay interest rates, fees and/or charges not justified by marketplace economics in place at the time the lien was originated.

119.   Contains loan terms whereby the borrower can never realistically repay the loan, representative of "Bait and Switch" tactics.

WHEREFORE, Plaintiffs pray for relief as set forth below.

## FOURTEENTH CAUSE OF ACTION

### Quiet Title

### (All Defendants Claiming Any Interest In the Subject Property)

120.   Plaintiffs re-allege and incorporate by reference all preceding paragraphs as though fully set forth herein.

121.   Plaintiffs is at all times herein mentioned the owner and/or entitled to possession of

the Property, until the date of sale that transferred physical possession of the deed of trust to the non-bonafide subsequent purchaser..

122.    Plaintiffs are informed and therefore believes and thereupon alleges that Defendants, and each of them, claim an interest in the Subject Property adverse to Plaintiffs.  However, as a result of the conduct more fully described in the preceding allegations, the claim of Defendants is without any right whatsoever, and said Defendants have no legal or equitable right, claim, or interest in the Property.

123.    Plaintiffs therefore seek a declaration that the title to the Subject Property is vested in Plaintiff's alone and that the Defendants herein, and each of them, be declared to have no estate, right, title or interest in the Subject Property and that said Defendants, and each of them, be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiffs.

## FIFTEENTH CAUSE OF ACTION

### Lack of Standing; Improper Fictitious Entity

### (Against Defendant MERS)

124.  Plaintiffs re-alleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

125.    Where a power to sell real property is given to a mortgagee, or other entity whom has placed an encumbrance on title, in an instrument intended to secure the payment of money, the power is part of the security and vests in any person who by assignment becomes entitled to payment of the money secured by the instrument. The power of sale may be exercised by the assignee if the assignment is duly acknowledged and recorded.

126.    Mortgage Electronic Registration System (MERS) has been named the beneficiary for this loan. MERS was created to eliminate the need for the executing and recording of assignment of mortgages, with the idea that MERS would be the mortgagee of record. This would allow MERS to foreclose on the property, and at the same time, assist COUNTRYWIDE in avoiding the recording of the Assignments of Beneficiary on loans sold. This saved COUNTRYWIDE money in manpower and the costs of recording these notes. It was also designed to "shield" investors from liability as a result of lender misconduct regarding the process of mortgage lending.

127.    MERS is simply an "artificial" entity designed to circumvent certain laws and other legal requirements dealing with mortgage loans. By designating certain member employees to be MERS corporate officers, MERS has created a situation whereby the foreclosing agency and MERS "designated officer" has a conflict of interest.

128.    Since neither MERS nor the servicer have a beneficial interest in the note, nor do they receive the income from the payments, and since it is actually an employee of the servicer signing the Assignment in the name of MERS, the Assignment executed by the MERS employee is illegal. The actual owner of the note has not executed the Assignment to the new party. An assignment of a mortgage in the absences of the assignment and physical delivery of the note will result in a nullity.

129.    It must also be noted that the lender or other holder of the note registers the loan on MERS. Thereafter, all sales or assignments of the mortgage loan are accomplished electronically under the MERS system. MERS never acquires actual physical possession of the mortgage note, nor do they acquire any beneficial interest in the Note.

130.    The existence of MERS indicated numerous violations of the Unfair and Deceptive Acts and Practices due to the conflicting nature and identity of the servicer and the beneficiary. Each of these practices were intentionally designed to mislead the borrower and benefit the lenders.

131.   One can only conclude after a reading of this section, that MERS has no legal standing to foreclose.

WHEREFORE, Plaintiffs pray for judgment against Defendants, and each of them, as set forth herein.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs will ask for the following for each Cause of Action sustained:

1.  For Compensatory Damages in an amount to be determined by proof at trial.

2.  For Special Damages in an amount to be determined by proof at trial.

3.  For General Damages in an amount to be determined by proof at trial.

4.  For Treble Damages in an amount to be determined by proof at trial.

5.  For Punitive Damages as against the individual Defendants.

6.  For Attorney's Fees and Costs of this action.

7.  For Declaratory Relief, including a declaration that Plaintiffs is the prevailing party.

8.  For Injunctive Relief;

9.  For a judgment rescinding the Loan and Security Agreement and setting forth terms of restitution.

10. Quiet Title.

11. For any prejudgment or other interest according to law.

12. Any other and further relief that the Court considers just and proper.

June ___, 2010

MICHAEL MELANCON and
CRYSTAL MELANCON

985 308 - 1277