UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

MICHAEL MELANCON, ET AL.                    CIVIL ACTION

VERSUS                                      NO: 10-1723

COUNTRYWIDE BANK, FIRST                     SECTION: R(2)
AMERICAN TITLE INSURANCE CO.,
MORTGAGE ELECTRONIC
REGISTRATION SYSTEMS, INC.,
AND DOES 1 THROUGH 50


**<u>ORDER AND REASONS</u>**

Before the Court is defendants Bank of America, N.A. f/k/a
Countrywide Bank, FSB and Mortgage Electronic Registration
Systems, Inc.'s unopposed motion to dismiss plaintiffs Michael
and Crystal Melancon's action under Rule 12(b)(6) of the Federal
Rules of Civil Procedure.[1]  Because each of the Melancons'
fifteen causes of action is either time barred or fails to state
a claim on which relief can be granted, the Court GRANTS
defendants' motion.

---

[1]    (R. Doc. 10.)

I.    **BACKGROUND**

On March 5, 2008, Michael and Crystal Melancon executed a
mortgage and promissory note with Countrywide Bank, FSB
(Countrywide) to finance the purchase of a property located at
118 Braden Lane in Luling, Louisiana.  Mortgage Electronic
Registration Systems, Inc. (MERS) was listed in the mortgage as
the mortgagee.[2]  Pursuant to that mortgage and promissory note,
the Melancons borrowed $270,750.[3]  The Melancons defaulted on the
note payments, and, on May 19, 2009, Countrywide initiated
foreclosure proceedings to seize and sell the property.  On June
11, 2010, the Melancons filed a *pro se* complaint against
Countrywide, First American Title Insurance Company, and MERS,
seeking damages and rescission of their note and mortgage based
on defendants' alleged violations of various state and federal
laws.[4]  On June 14, 2010, the Melancons moved for a temporary
restraining order to prevent the sale of the property.[5]  The
Court denied that motion on June 15, 2010,[6] and the property was

---

[2]    (R. Doc. 10-2, Ex. I.)

[3]    (R. Doc. 10-2, Ex. B.)

[4]    (R. Doc. 1.)

[5]    (R. Doc. 3.)

[6]    (R. Doc. 4.)

sold the next day at a sheriff's sale to Countrywide.[7]

Countrywide and MERS now move to dismiss for failure to state a claim upon which relief can be granted.[8]

## II.  STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead enough facts "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, --- U.S. ----, 129 S. Ct. 1937, 1960 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007)).  A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1940.  A court must accept all well-pleaded facts as true and must draw all reasonable inferences in favor of the plaintiff. *Lormand v. U.S. Unwired, Inc.*, 565 F.3d 228, 239 (5th Cir. 2009); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996).  But the Court is not bound to accept as true legal conclusions couched as factual allegations. *Iqbal*, 129 S. Ct. at 1949.

A legally sufficient complaint must establish more than a

---

[7]   (R. Doc. 10-1 at 2.)

[8]   (R. Doc. 10.)

"sheer possibility" that plaintiff's claim is true. *Id.*  It need
not contain detailed factual allegations, but it must go beyond
labels, legal conclusions, or formulaic recitations of the
elements of a cause of action. *Twombly*, 550 U.S. at 555.  In
other words, the face of the complaint must contain enough
factual matter to raise a reasonable expectation that discovery
will reveal evidence of each element of the plaintiff's claim.
*Lormand*, 565 F.3d at 256.  If there are insufficient factual
allegations to raise a right to relief above the speculative
level, *Twombly*, 550 U.S. at 555, or if it is apparent from the
face of the complaint that there is an insuperable bar to relief,
*Jones v. Bock*, 549 U.S. 199, 215 (2007); *Carbe v. Lappin*, 492
F.3d 325, 328 & n.9 (5th Cir. 2007), the claim must be dismissed.

    In considering a motion to dismiss for failure to state a
claim, the Court must typically limit itself to the contents of
the pleadings, including attachments thereto.  *Collins v. Morgan
Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000).  The
Court, however, "may review the documents attached to the motion
to dismiss, *e.g.*, the contract[] in issue here, where the
complaint refers to the documents and they are central to the
claim." *Kane Enterprises v. MacGregor (USA) Inc.*, 322 F.3d 371,
374 (5th Cir. 2003); *see also Collins*, 224 F.3d at 498 (adopting
the position that "documents that a defendant attaches to a

4

motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim") (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)).

## III. DISCUSSION

The Melancons identify the following causes of action in their complaint: (1) "Declaratory Relief"; (2) "Injunctive Relief"; (3) "Determine Nature, Extend [*sic*] and Validity of Lien"; (4) "Contractual Breach of Implied Covenant of Good Faith and Fair Dealing"; (5) "Violation of TILA, 15 U.S.C. § 1601, et. [*sic*] seq."; (6) "Violation of RESPA, 1 [*sic*] U.S.C. § 2601 et. [*sic*] seq."; (7) "Rescission"; (8) "Fraud"; (9) "Unfair and Deceptive Business Act Practices (UDAP)"; (10) "Breach of Fiduciary Duty"; (11) "Unjust Enrichment"; (12) "Unconscionability – UCC-2-3202 [*sic*]"; (13) "Predatory Lending"; (14) "Quiet Title"; and (15) "Lack of Standing; Improper Fictitious Entity."  The Court address each of these causes of action in turn.

## A.   Declaratory Relief

The Melancons' first cause of action asserts a claim for declaratory relief to establish that defendants did not have the

5

right to foreclose on the property located at 118 Braden Lane because defendants' interest in the property has allegedly been rendered void due to violations of state and federal law.[9] Specifically, the Melancons allege that "Defendants' security interest in the Subject Property has been rendered void by operation of law, pursuant to 24 Code of Federal Regulations 3500.10, UDAP, TILA, and RESPA," that "Defendants did not properly comply with property delivery procedures under RESPA," and that "Defendants perpetrated a fraudulent loan transaction."[10]   The Melancons fail to allege any facts and rely solely on legal conclusions regarding defendants' alleged wrongful conduct.   Those legal conclusions are not entitled an assumption of truth when ruling on a motion to dismiss.   *See Iqbal*, 129 S. Ct. at 1949.   Moreover, as discussed more thoroughly below, the Melancons have failed to state claims for the underlying alleged violations of state and federal law that they contend call for declaratory relief.

For these reasons, the Court GRANTS defendants' motion to dismiss as to the Melancons' first cause of action.

---

[9]   (R. Doc. 1 at 9-10.)

[10]   (*Id.* at 10.)

6

**B.    Injunctive Relief**

The Melancons' second cause of action seeks an injunction preventing defendants from proceeding with a foreclosure action.[11]  The Melancons argue that injunctive relief is appropriate because "real property is inherently unique and it will be impossible to determine the precise amount of damage Plaintiffs will suffer,"[12] and "[s]aid sale will cause Plaintiffs great and irreparable injury in that real property is unique."[13]  Yet, as discussed above, the Court denied the Melancons' motion for a temporary restraining order to prevent the sale of the home on June 15, 2010,[14] and the property was sold at a sheriff's sale to Countrywide on June 16, 2010.  The Melancons' request for injunctive relief is therefore moot.

As such, the Court GRANTS defendants' motion with regard to the Melancons' second cause of action.

**C.    Perfection of Defendants' Security Interest**

In their third cause of action, the Melancons allege that

---

[11]    (*Id.* at 10-11.)

[12]    (*Id.* at 11.)

[13]    (*Id.* at 11.)

[14]    (R. Doc. 4.)

7

defendants do not possess the original promissory note and have
thus failed to comply with the requirements to perfect their
security interest in the Melancons' home.  Perfection of a
security interest, however, is relevant only as to third parties
claiming priority over that interest.  *See In re Ark-La-Tex
Timber Co., Inc.*, 482 F.3d 319, 326 n.4 (5th Cir. 2007)
(contrasting "attachment" and "perfection" and explaining that
"[t]o make a security interest effective as against *third-
parties*, it must be validly attached and thereafter perfected")
(emphasis added); *see also* La. Rev. Stat. 10:9-322(2) (giving
priority to perfected security interests over unperfected
security interests).  Unperfected security interests remain valid
between the parties to the agreement as long as the interest
"attaches."  *See* La. Rev. Stat 10:9-203 ("A security interest
attaches to collateral when it becomes enforceable against the
debtor with respect to the collateral, unless an agreement
expressly postpones the time of attachment."); *Edwards v. Your
Credit, Inc.*, 148 F.3d 427, 437 (5th Cir. 1998) ("In Louisiana
. . . . a security interest attaches in the property
collateralized when a debtor signs a security agreement or
financing statement containing a description of the collateral
for which value has been given and in which the debtor has
rights.").  Accordingly, Countrywide's alleged failure to perfect

8

its security interest in the property does not give rise to a cause of action by the Melancons.

The Melancons additionally allege that defendants' interest in the property is void under 11 U.S.C. § 544.  Yet, that statute relates to the rights and powers of trustees in bankruptcy proceedings.  It has no apparent application in this case and does not serve to void Countrywide's security interest.

Accordingly, the Court GRANTS defendants' motion to dismiss as the Melancons' third cause of action.

**D.   Implied Covenant of Good Faith and Fair Dealing**

In their fourth cause of action, the Melancons allege that defendants willfully breached an implied covenant of good faith and fair dealing by withholding "numerous disclosures" including, for example, notices of "Underwriting standards, Yield Spread Premiums/Discount Fees, [and] Disclosures of additional income due to interest rate increases."[15]

In Louisiana, to state a cause of action for breach of the duty of good faith and fair dealing, a plaintiff must allege that the defendant's actions were prompted by fraud, ill will, or sinister motivation.  *Commercial Nat'l Bank v. Audubon Meadow*

---

[15]   (R. Doc., 1 at 13.)

*Partnership*, 566 So.2d 1136, 1139 (La. Ct. App. 1990).   In *Industrias Magromer Cueros y Pieles S.A. v. Louisiana*, 293 F.3d 912 (5th Cir. 2002), the Fifth circuit relying on *Bond v. Broadway*, 607 So.2d 865 (La. Ct. App. 1992), provided the following definition of bad faith:

> The opposite of "good faith," generally implying or involving actual or constructive fraud, or a design to mislead and deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive.  The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.

*Industrias Magromer*, 293 F.3d at 922.

In this case, the Melancons fail to allege any specific facts and provide only legal conclusions regarding defendants' alleged violation of the implied covenant of good faith and fair dealing.  Although the Melancons allege that defendants withheld a number of disclosures and placed them in a loan that they could not afford, the Melancons do not explain how defendants' actions constitute a breach of the implied covenant of good faith and fair dealing.  The Melancons have not asserted a legal or factual basis for their claim or shown that any of the disclosures they identify were required under any statute or regulation.  The Melancons' conclusory allegations are insufficient to properly plead this claim.  *See Iqbal*, 129 S. Ct. at 1949.

10

As such, the Court GRANTS defendants' motion to dismiss as to the Melancons' claim for breach of the implied covenant of good faith and fair dealing.

**E.   Truth in Lending Act**

In their fifth cause of action, The Melancons claim that defendants violated the Truth in Lending Act (TILA) by failing to provide them with (1) two copies of a notice of a right to cancel; (2) information regarding their interest rate, which they claim was inconsistent; (3) a "Good Faith Estimate and Commitment"; (4) a "Property/Hazard Insurance Disclosure"; a disclosure of the legal obligations between the parties; and (5) the "Consumer Handbook on Adjustable Rate Mortgages."[16]  Based on the alleged failure to disclose these materials, the Melancons seek damages and rescission of their note and mortgage.[17]

TILA "has the broad purpose of promoting 'the informed use of credit' by assuring 'meaningful disclosure of credit terms' to consumers." *Ford Motor Credit Co. v. Milhollin*, 444 U.S. 555, 559-60 (1980) (citing 15 U.S.C. § 1601).  TILA defines disclosures that must be made in certain consumer credit

---

[16]    (R. Doc. 1 at 14-16.)

[17]    (*Id.* at 16.)

transactions, including disclosure of the consumer's right to rescind up to three business days following consummation of the transaction, delivery of a notice of right to rescind, or delivery of all material disclosures, whichever occurs last. *See* 15 U.S.C. § 1635(a); 12 C.F.R. § 226.23(a)(3), (b).  If notice of the right to rescind and certain material disclosures are not timely made, the right to rescind expires three years after consummation of the transaction. *See* 15 U.S.C. § 1635(f); 12 C.F.R. § 226.23(a)(3).  If an obligor exercises his right to rescind, the security interest given by the obligor is void, and the creditor must return any money or property given as earnest money or down payment and take any necessary action to reflect the termination of the security interest.  15 U.S.C. § 1635(b). There is no right of rescission, however, with respect to "residential mortgage transactions." *See* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1); *Perkins v. Central Mortg. Co.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006) (explaining that the right of rescission does not apply to residential mortgage transactions). A "residential mortgage transaction" means "a transaction in which a mortgage . . . is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling."  15 U.S.C. § 1602(w).  To bring an action against a creditor under TILA for damages, the debtor

12

must bring the action "within one year from the date of the occurrence of the violation."  15 U.S.C. § 1640(e); *see also In re Smith*, 737 F.2d 1549, 1552 (11th Cir. 1984).

The Court finds that the Melancons cannot maintain a cause of action under TILA.  As an initial matter, the Court notes that, because the Melancons' mortgage and note were for the purposes of purchasing the property located at 118 Braden Lane,[18] the Melancons have no right of rescission for the alleged failure to disclose.  *See* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1).  Likewise, defendants were not required to provide two copies of disclosures related to the right of rescission, because the Melancons had no such right.  *See Perkins v. Central Mortg. Co.*, 422 F. Supp. 2d 487, 489 (E.D. Pa. 2006); *see also* 12 C.F.R. § 226.23(b)(1) ("*In a transaction subject to rescission*, a creditor shall deliver two copies of the notice of the right to rescind . . . .") (emphasis added).  Moreover, contrary to the Melancons' contention, their fixed interest rate of 6.750 percent was clearly indicated in their mortgage documents.[19]  And, because the Melancons' mortgage rate was fixed, defendants were not required to provide them with a copy

---

[18]   (R. Doc. 10-2 at 1.)

[19]   (*Id.* at 1, 6, 10, 13, .)

of the Consumer Handbook on Adjustable Rate Mortgages. *See* 12 C.F.R. § 226.19(b)(1) (requiring disclosure of the handbook "[i]f the annual percentage rate may increase after consummation").

Even assuming defendants somehow violated TILA by failing to make the required disclosures, the Melancons' claim is time-barred. Under 15 U.S.C. § 1640(e), "[a]ny action under this section may be brought . . . within one year from the date of the occurrence of the violation." "The limitations period in Section 1640(e) runs from the date of the transaction . . . but the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *Jackson v. Adcock*, 2004 WL 1900484, *4 (E.D. La. 2006) (quoting *King v. California*, 784 F.2d 910, 915 (9th Cir. 1986)). The Melancons signed the note and mortgage documents on March 5, 2008 but did not bring this action against defendants until June 11, 2010. The statute of limitations thus bars the Melancons' claims. *See Jackson,* 2004 WL 1900484 at *4 (dismissing plaintiff's TILA claim for failure to file within the limitation period and noting that "[n]othing prevented [plaintiff] from comparing the loan documents and TILA's statutory and regulatory requirements").

14

**F.   Real Estate Settlement Procedures Act**

The Melancons' sixth cause of action states that Countrywide violated the Real Estate Settlement Procedures Act ("RESPA") by paying a "Yield Spread Premium" or "Discount Fee" in the amount of $1,353.75 "to mortgage brokers" "in order to eventually receive a 'kickback' and ultimately benefit over the life of the loan."[20]   The Court notes, however, that although the Melancons assert that Countrywide paid $1,353.75 "to mortgage brokers," their Settlement Statement, which lists all settlement charges associated with their mortgage, indicates that the Melancons paid that amount to Countrywide as a "loan discount."[21]   Moreover, because the payment was made directly to Countrywide by the Melancons, the Melancons' description of the fee as a "Yield Spread Premium" is inapt.   A yield spread premium, by contrast, is a payment from the lender *to a broker* that enables borrowers to finance up-front closing costs by paying a higher interest rate on their home loan.   *O'Sullivan v. Countrywide Home Loans, Inc.*, 319 F.3d 732, 739 (5th Cir. 2003) (citing 1999 HUD Policy Statement, 10,081)).   The Court thus construes the Melancons' claim as a challenge to the legality of the $1,353.75 "loan

---

[20]    (R. Doc. 1 at 17-18.)

[21]    (R. Doc. 10-2 at 20.)

15

discount" fee charged by Countrywide.

The Melancons' reference to the loan discount fee as a "kickback" suggests that they have brought a claim under section 8 of RESPA, 12 U.S.C. § 2607, which includes two separate prohibitions. Section 8(a), titled "Business referrals," provides: "[n]o person shall give and no person shall accept any fee, kickback, or thing of value pursuant to any agreement or understanding, oral or otherwise, that business incident to or a part of a real estate settlement service[22] involving a federally related mortgage loan shall be referred to any person." 12 U.S.C. § 2607(a). And section 8(b), titled "Splitting charges," prohibits any person from giving or accepting "any portion, split, or percentage of any charge made or received for the

_____

[22]     A "settlement service" is defined as:

any service provided in connection with a real estate settlement including, but not limited to, the following: title searches, title examinations, the provision of title certificates, title insurance, services rendered by an attorney, the preparation of documents, property surveys, the rendering of credit reports or appraisals, pest and fungus inspections, services rendered by a real estate agent or broker, the origination of a federally related mortgage loan (including, but not limited to, the taking of loan applications, loan processing, and the underwriting and funding of loans), and the handing of the processing, and closing or settlement.

12 U.S.C. § 2602(3).

16

rendering of a real estate settlement service in connection with a transaction involving a federally related mortgage loan other than for services actually performed." 12 U.S.C. § 2607(b). Even assuming some sort of RESPA violation, claims based on section 8 are subject to a one-year statute of limitations when brought by private plaintiffs. 12 U.S.C. § 2614. Because the fee was assessed and clearly disclosed to the Melancons on March 5, 2008,[23] and because the Melancons filed their claim over one year later,[24] they cannot maintain a cause of action under sections 8(a) or 8(b). *See Snow v. First American Title Ins. Co.*, 332 F.3d 356, 359 & n.3 (5th Cir. 2003) (affirming dismissal of plaintiffs' RESPA claims as time barred and explaining that the statute of limitations begins to run at the time the violation is alleged to have occurred); *see also Perkins v. Johnson*, 551 F. Supp. 2d 1246, 1252 (D. Colo. 2008) (explaining that courts have predominantly found that the statute of limitations for claims brought under 23 U.S.C. § 2607 runs from the date of the closing of the loan).

For this reason, the Court GRANTS defendant's motion to dismiss with regard to the Melancons' sixth cause of action.

---

[23]    (*Id.* at 20.)

[24]    (R. Doc. 1.)

17

**G.   Rescission**

In their seventh cause of action, the Melancons contend that they are entitled to rescind their loan because (1) defendants violated TILA (2) defendant failed to provide a Mortgage Loan Origination Agreement; (3) defendants engaged in fraud; and (4) public policy requires it.  Rescission, however, is a remedy and not an independent cause of action.  The Court finds that none of the Melancons' justifications calls for rescission of their note and mortgage.  First, as discussed above, TILA does not provide a right of rescission for "residential home mortgages" such as the one entered into by the Melancons.  *See* 15 U.S.C. § 1635(e)(1); 12 C.F.R. § 226.23(f)(1).  Second, contrary to the Melancons' contention, Countrywide provided them with a Mortgage Loan Origination Agreement, as evidenced by their signatures acknowledging receipt.[25]  Third, as discussed in Section H of this Order, the Melancons have not alleged fraud with particularity, and thus cannot assert it as a basis for rescission.  Finally, the Melancons have not articulated a public policy basis that would require rescission, nor is one apparent. The Melancons are thus not entitled to rescission of their note

---

[25]   (R. Doc. 10-2 at 21-22.)

and mortgage.

As such, the Court GRANTS defendants' motion as to the Melancons' seventh cause of action.

## H.    Fraud

The Melancons eighth cause of action alleges that defendants fraudulently induced them to enter into a loan that they could not afford.[26]   The Melancons assert that defendants engaged in fraud by "willfully and wantonly . . . deceiving Plaintiffs and inducing them to part with their personal and real property buy [*sic*] using a stated income loan."[27]   The Melancons further assert that defendants engaged in the "unlawful suppression of facts or circumstances . . . for self-serving purposes a financial gain."[28]

The Federal Rules of Civil Procedure require a plaintiff to plead the elements of fraud "with particularity."   Fed. R. Civ. P. 9(b).   "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud."   *United States ex rel. Doe v. Dow Chem. Co.*, 343 F.3d

---

[26]    (R. Doc. 1 at 19-20.)

[27]    (R. Doc. 1 at 19.)

[28]    (*Id.*)

325, 328 (5th Cir. 2003).  The Court finds that the Melancons
have failed to sufficiently allege fraud with respect to their
note and mortgage.  The Melancons have not alleged which of
defendants' representations were fraudulent, nor when or where
those representations occurred.  Moreover, the Melancons'
statements that defendants "intentionally, willfully and wantonly
engaged in the acts with the purpose of deceiving Plaintiffs and
inducing them to part with their personal and real property buy
[*sic*] using a stated income loan," and that defendants "engaged
in the unlawful suppression of facts or circumstances by one of
the parties to a contract from the other" are legal conclusions
and are entitled to no weight.  *See Iqbal*, 129 S. Ct. at 1949.

Accordingly, the Court GRANTS defendant's motion to dismiss
as to the Melancons' allegations of fraud.

**I.   Unfair and Deceptive Business Act and Practices**

In their ninth cause of action, the Melancons' allege that
defendants "violated Unlawful and Deceptive Acts and Practices
laws by consummating an unlawful, unfair, and fraudulent business
practice, designed to deprive Plaintiffs of their home, [*sic*]
equity, as well as her [*sic*] past and future investment."[29]

---

[29]   (R. Doc. 1 at 20-21.)

Specifically, the Melancons identify the following alleged violations:

> [L]ack of Broker Disclosures and Mortgage Loan Origination Agreement, lack of complete Lender Initial Disclosures, flawed and substandard underwriting, lack of due diligence with regard to qualifying the Plaintiffs for the loan, Appraisal Fraud, Truth in Lending Disclosure errors, proper notice of Plaintiff's Right to Cancel, Payment of Yield Spread Premiums/Discount Fees as Unearned Fee and Unjust Enrichment, Equal Opportunity Act Violations, failure to meet Fiduciary Duty obligations, Fraudulent Misrepresentation of loan terms, Fraud in the Factum, and Equity Stripping.[30]

Although the Melancons cite no statute or regulation in particular, they appear to assert a claim under the Louisiana Unfair Trade Practices Act (LUTPA), which prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."  La. Rev. Stat. § 51:1405(A).  "[A] practice is considered unfair, in the context of unfair trade practice law, when it offends public policy, and when the practice is unethical, oppressive, unscrupulous, or substantially injurious to consumers or business competitors." *Donald v. ACM Gaming Co.*, 921 So.2d 196, 202 (La. Ct. App. 2005). The determination that alleged conduct equates to an unfair practice requires fact-sensitive analysis, and the decision must be made on a case-by-case basis.  *Id.* (citing *Vermilion Hosp.,*

---

[30]     (*Id.* at 20.)

21

*Inc. v. Patout*, 906 So.2d 688 (La. Ct. App. 2005)).

LUTPA, however, expressly exempts from its application "actions or transactions subject to the jurisdiction of . . . federal banking regulators who possess authority to regulate unfair or deceptive trade practices." La. Rev. Stat. § 51:1406(1). As Countrywide Bank, FSB was a federal savings association at the time of the transaction and therefore regulated by the Office of Thrift Supervision (OTS), *cf.* 12 C.F.R. § 560.1 (defining the authority and scope of regulations promulgated by OTS for federal savings associations and setting forth general lending standards), the Melancons cannot maintain a LUTPA claim against Countrywide. *See Hayes v. Wells Fargo Home Mortgage*, 2006 WL 3193743, *6-7 (E.D. La. 2006); *Bank of N.Y. v. Parnell*, 32 So.3d 877, 883 (La. Ct. App. 2010).

In addition, LUPTA provides that an action brought under its sections "shall be prescribed by one year running from the time of the transaction or act which gave rise to this right of action." La. Rev. Stat. § 51:1409(E). Louisiana courts have consistently held that LUTPA's one-year limitation period is peremptive, rather than prescriptive, in nature, *see Tubos de Acero de Mexico v. American International Investment Corp., Inc.*, 292 F.3d 471, 481 n.4 (5th Cir. 2002), meaning that it is not subject to suspension, interruption, or renunciation and is not

22

subject to the doctrine of *contra non valentum*, which suspends the running of prescription when the cause of action is not known or reasonably knowable by the plaintiff, *Louisiana v. McInnis Bros. Constr.*, 701 So.2d 937, 939-40 (La. 1997).

The Melancons filed this suit on June 11, 2010.  Thus, any LUPTA claim must be based on conduct that occurred after June 11, 2009.  Yet, the basis of the Melancons' claim is that they were induced into a mortgage that they could not afford.  That mortgage was executed on March 5, 2008.  Although Louisiana courts have recognized that a "continuing violation" of LUPTA can prevent the peremptive period from running, *see, e.g.*, *Benton, Benton, and Benton v. Louisiana Public Facilities Authority*, 672 So.2d 720, 723 (La. Ct. App. 1996) (finding that the one-year peremptive period had not begun to run when the defendant continued to violate LUTPA), the Melancons do not allege any such "continuing violation."  Instead, the unfair and deceptive practices that the Melancons allege relate to the formation of the loan.  *See Miller v. Conagra, Inc.*, 991 So.2d 445, 455-57 (La. 2008) (explaining that a continuing violation is one in which defendant continues to engage in wrongful conduct, "not the continuation of the ill effects of an original, wrongful act") (quoting *Crump v. Sabine River Authority*, 737 So.2d 720, 728 (La. 1999)).  Because the Melancons do not allege that defendants took

23

any actions or engaged in any wrongful conduct after the execution of the note and mortgage, the continuing violation theory is inapplicable, and the commencement of their limitation period cannot be extended through March 2009. *See Tessier v. Moffatt*, 93 F. Supp. 2d. 729, 737 (E.D. La. 1998) (dismissing some of plaintiff's LUTPA claims because the violations occurred more than a year before filing and because plaintiff had identified how the violations were continuing); *Stafford v. Painewebber, Inc.*, 730 F. Supp 15, 19 (E.D. La. 1990) ("Because the alleged unfair trade practices occurred more than one year before plaintiff filed this suit, his unfair trade practice claims are perempted."). *Compare Jackson v. Adcock*, 2004 WL 1900484, *5 (E.D. La. 2004) (finding that plaintiff's LUPTA claim was not time-barred because plaintiff filed her suit within one year of defendant's alleged misrepresentations).

Accordingly, the Court GRANTS defendants' motion to dismiss as to the Melancons' ninth cause of action.


**J.   Breach of Fiduciary Duty**

In their tenth cause of action, the Melancons allege that defendants owed them a fiduciary duty and breached that duty by failing to advise and/or notify them when "Defendant's broker knew or should have known that Plaintiffs will or has a

24

likelihood of defaulting on the loan."[31]  Louisiana Revised
Statute § 6:1124, however, provides that "[n]o financial
institution . . . shall be deemed or implied to be acting as a
fiduciary, or have a fiduciary obligation or responsibility to
its customers or to third parties . . . unless there is a written
agency or trust agreement under which the financial institution
specifically agrees to act and perform in the capacity of a
fiduciary."  La. Rev. Stat. 6:1124; *see also Whitfield v.
Countrywide Home Loans, Inc.*, 252 F. App'x. 654, 656 (5th Cir.
2007) (affirming dismissal of plaintiff's fiduciary claim because
plaintiff failed to identify a writing imposing fiduciary
obligations); *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp,
Inc.*, 56 F. Supp. 2d 694, 702-03 (E.D. La. 1999) (finding no
implied fiduciary duty between a financial institution and a
borrower).  Thus, "dealings between lending institutions and
borrowers are generally considered to be arm's length
transactions which do not impose any independent duty of care on
the part of the lender."  *Guimmo v. Albarado*, 739 So.2d 973, 975
(La. Ct. App. 1999).  The Melancons have not alleged the
existence of any written agency or trust agreement under which
defendants specifically agreed to act and perform in the capacity

---

[31]     (R. Doc. 1 at 21.)

of a fiduciary, nor have they alleged any special circumstances in which a fiduciary relationship is "manifest."  *Id.*

Accordingly, defendants' motion to dismiss is GRANTED as to the Melancons' breach of fiduciary duty claim.

**K.   Unjust Enrichment**

The Melancons' eleventh cause of action states that defendants have been unjustly enriched through the sale of the property, which allegedly "allow[ed] Defendant's [*sic*] to recoup the extreme profits enjoyed by forcing Plaintiffs into an imbalance of principle to interest ratio."[32]

The elements of an unjust enrichment claim are as follows: There must be (1) enrichment of the defendant; (2) an impoverishment of the plaintiff; (3) a connection between the enrichment and the resulting impoverishment; (4) an absence of justification or cause for the enrichment and impoverishment; and (5) there must be no other remedy at law available to plaintiff. *Baker v. Maclay Properties Co.*, 648 So.2d 888, 897 (La. 1995). The Melancons have other and more obvious remedies at law that preclude their claim for unjust enrichment.  They have alleged numerous other theories of recovery against defendants in this

---

[32]    (R. Doc. 1 at 22.)

26

lawsuit, and they are undisputably parties to a contract with
Countrywide.  *See Bamburg Steel Buildings, Inc. v. Lawrence
General Corp.*, 817 So.2d 427, 438 (La. Ct. App. 2002) (explaining
that the existence of a contract makes unavailable an unjust
enrichment claim); *Fagot v. Parsons*, 958 So.2d 750, 753 (La. Ct.
App. 2007) (dismissing plaintiff's unjust enrichment claim
because there were "two other remedies" that plaintiff could have
asserted against defendant).  Whether those claims ultimately
succeed is irrelevant.  "It is not the success or failure of
other causes of action, but rather the *existence* of other causes
of action, that determine whether unjust enrichment can be
applied."  *Garber v. Badon & Ranier*, 981 So.2d 92, 100 (La. Ct.
App. 2008); *see also Board of Suppliers of La. State Univ. v. La.
Agricultural Finance Authority*, 984 So.2d 72, 81 (La. Ct. App.
2008) ("explaining that unjust enrichment is a remedy of last
resort under Louisiana law and "is only applicable to fill a gap
in the law where no express remedy is provided.").  Because the
Melancons have other remedies at law against defendants, they
have failed to state a claim for unjust enrichment.

As such, defendants' motion to dismiss is granted as to the
Melancons' unjust enrichment claim.

**L.   Unconscionability**

27

In the Melancons' twelfth cause of action, they allege that, "based on the deception, unfair bargaining position, lack of adherence to the Regulations and federal standards that the Defendants were required to follow; coupled with the windfall that Defendants reaped financially from their predatory practices," the loan agreement was unconscionable under § 2-302 of the Uniform Commercial Code (UCC) and should be given "no force or effect."[33]  Section 2-302 of the UCC, which is contained in Article 2, provides:

> If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any unconscionable result.

UCC § 2-302.  Louisiana, however, has not adopted Article 2 of the Uniform Commercial Code.  *See Skansi Marine, LLC v. Ameron Intern. Corp.*, 2003 WL 22852221, *7 (E.D. La. 2003) (contrasting Louisiana, which has not adopted Article 2, with Alabama, which has); *N.J. Collins, Inc. v. Pacific Leasing, Inc.*, 1997 WL 786239, *4 (E.D. La. 1997) (noting that every state other than Louisiana has adopted Article 2).  Because Louisiana law governs the underlying contractual agreement between the parties, the

---

[33]     (R. Doc. 1 at 23.)

Melancons' UCC claim must fail.

Accordingly, the Court GRANTS defendants' motion to dismiss as to the Melancons' twelfth cause of action.

## M.   Predatory Lending

In their thirteenth cause of action, the Melancons allege that defendants engaged in "Predatory Lending" by failing to disclose material terms and including terms in the loan that were "unfair, fraudulent or unconscionable."[34]  The Melancons also assert that the loan is "marked in whole or in part on the basis of fraud, exaggeration, misrepresentation or the concealment of a material fact and was underwritten without due diligence by the party originating the loan"; "does not plainly and prominently disclose on the good faith estimate of closing costs the size of any yield spread premium/discount fees; and "utilized excessively high fees and costs."[35]  The Melancons, however, do not identify a legal basis for their cause of action, other than to refer to the Office of Comptroller of the Currency's definition of "Predatory Lending."[36]  Vague allegations containing mere labels

---

[34]     (*Id.* at 24.)

[35]     (*Id.*)

[36]     (*Id.*)

and conclusions are insufficient to survive a motion to dismiss. *See Towmbly*, 550 U.S. at 555.  Without more, the Melancons have failed to state a claim upon which relief can be granted.

The Court thus GRANTS defendants' motion with regard to the Melancons' twelfth cause of action.

**N.   Quiet Title**

The Melancons' fourteenth cause of action states that they are the rightful owners of the property located at 118 Branden lane and that, as a result of the defendants' alleged wrongful conduct, the defendants' interest in the property "is without any right whatsoever."[37]   The Melancons seek a declaration that the title to the property "is vested in Plaintiff's [*sic*] alone and that Defendants herein . . . be declared to have no estate, right, title or interest in the Subject Property and that said Defendants . . . be forever enjoined from asserting any estate, right, title or interest in the Subject Property adverse to Plaintiffs."[38]

In essence, the Melancons ask the Court to invalidate the state court foreclosure proceedings.  The Court, however, lacks

---

[37]    (*Id*. at 24-25.)

[38]    (*Id.* at 25.)

jurisdiction to interfere with state proceedings that implicate important state interests, *see Younger v. Harris*, 401 U.S. 37, 54 (1971), and it also lacks jurisdiction to review state-court judgments, *see Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 415 (1923); *D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).  In *Flores v. Citizens State Bank of Roma, Texas*, 132 F.3d 1457 (5th Cir. 1997) (per curiam), the Fifth Circuit held that a federal district court lacked jurisdiction over a collateral attack on the validity of a state court judicial foreclosure and writ of execution.  *Id.* at 1457.  This case is no different.  The State of Louisiana has an important interest in resolving foreclosure disputes, *see, e.g.*, *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13-14 (finding that the state has important interests in "forcing persons to transfer property in response to a court's judgment" and in "challenges to the process by which the State compels compliance with the judgment of its courts"); *Doscher v. Menifee Circuit Court*, 75 F. App'x 996, 997 (6th Cir. 2003) (finding that the state has an important interest in a foreclosure proceeding), and the Melancons could have adequately adjudicated their claim that defendants improperly obtained the property in state court.  *See* La. Code Civ. P. arts. 2751-54, 2642; *see also Avery v. CitiMortgage, Inc.*, 15 So.3d 240, 243 (La. Ct. App. 2009) ("Defenses and procedural objections

31

to an executory proceeding may be asserted either through an injunction proceeding to arrest the seizure and sale as provided in Articles 2751 through 2754, or a suspensive appeal from the order directing the issuance of the writ of seizure and sale, or both.").

For the reasons stated, the Court GRANTS defendants' motion as to the Melancons' fourteenth cause of action.

**O.   MERS's Lack of Standing**

In their fifteenth cause of action, the Melancons contend that MERS, as an "'artificial' entity," did not have standing to initiate the foreclosure action on the property located at 118 Braden Lane.[39]  Here again, the Melancons appear to challenge the validity of the state court executory proceeding, as they do not allege a legal basis for a claim against MERS.[40]  Yet, as discussed above, this Court lacks jurisdiction to review such a proceeding.  *See Flores*, 132 F.3d at 1457.

Accordingly, the Court GRANTS defendants' motion to dismiss as to the Melancons' fifteenth cause of action.

---

[39]   (*Id.* at 25-27.)

[40]   (*Id.* at 26-27.)

IV.   **CONCLUSION**

For the foregoing reasons, defendant's motion to dismiss is GRANTED and plaintiffs' claims are DISMISSED WITHOUT PREJUDICE.


New Orleans, Louisiana, this 18th day of February, 2011.


_Sarah Vance_
_____

SARAH S. VANCE

UNITED STATES DISTRICT JUDGE